Filed 3/11/15  P. v. Alexander CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E057334 |
| v. | (Super.Ct.No. RIF1201279) |
| JULIAN JAMAR ALEXANDER, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Michele D. Levine and Michael B. Donner, Judges.  Affirmed.

David L. Kelly, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Steven T. Oetting and William M. Wood, Deputy Attorneys General, for Plaintiff and Respondent.

1

A jury found defendant and appellant Julian Jamar Alexander guilty of attempted first degree robbery (Pen. Code, § 664, 211; count 1);[1] assault with a deadly weapon, to wit, a firearm (§ 245, subd. (a)(2); count 2); felon in possession of ammunition (§ 30305, subd. (a); count 3); and felon in possession of a firearm (§ 29800, subd. (a)(1); count 4). The jury also found true that in the commission of count 1, defendant personally and intentionally discharged a firearm (§ 12022.53, subd. (c)); and that in the commission of count 2, defendant personally used a firearm (§ 12022.5, subd. (a)). Defendant was sentenced to a total term of 24 years four months in state prison with credit for time served. On appeal, defendant makes several claims relating to the trial court's failure to conduct a competency hearing pursuant to section 1368. We reject defendant's claims and affirm the judgment.

I

FACTUAL AND PROCEDURAL BACKGROUND[2]

Peter Ramirez had known defendant for several months. Ramirez and defendant had used marijuana and methamphetamine together. On February 5, 2012, Ramirez called defendant around 1:00 a.m. to see if his friend Erika could obtain methamphetamine from defendant. Defendant responded angrily over the fact that Erika

---

[1] All future statutory references are to the Penal Code unless otherwise stated.

[2] Because the details of the factual background are not relevant to the limited issue raised on appeal, we will briefly summarize the details of defendant's crimes.

2

had called Ramirez rather than calling defendant directly. Ramirez uttered a profanity and hung up on defendant.

Later, as Ramirez was sitting in his bedroom, defendant walked through the sliding glass door, pointed a handgun at Ramirez's face, and demanded that Ramirez hand over marijuana and money. When Ramirez tried to move away from the gun, defendant swung it twice at Ramirez. Ramirez then ran for the bedroom door, while at the same time defendant ran for the sliding glass door. However, before exiting, defendant pointed the gun toward Ramirez and fired one time. Defendant and Ramirez were looking at each other when defendant fired the gun.

On March 5, 2012, an information was filed charging defendant with attempted robbery (§§ 664, 211; count 1); assault with a firearm (§ 245, subd. (a)(2); count 2); felon in possession of ammunition (§ 30305, subd. (a); count 3); and felon in possession of a firearm (§ 29800, subd. (a)(1); count 4). The information further alleged that in the commission of count 1, defendant personally and intentionally discharged a firearm (§ 12022.53, subd. (c)); and that in the commission of count 2, defendant personally used a firearm (§ 12022.5, subd. (a)). On March 12, 2012, defendant pled not guilty and denied the allegations.

On March 26, 2012, defendant made a motion for self-representation. Following an inquiry by the trial court about defendant's understanding of his request for self-representation, the court granted defendant's motion.

On April 23, 2012, at the trial readiness conference, defendant sought dismissal of the case under the Sixth Amendment and Penal Code section 1381 (right to a speedy trial). The court noted that defendant's time for a speedy trial had not run and that it runs 60 days from the filing of an information. Defendant stated that he understood and acknowledged the 60th day would be May 11, 2012. Defendant then requested that he be provided with the preliminary hearing transcript and discovery, and that the court make an order to allow him to make phone calls. The court denied his phone request but provided defendant with an investigator. Defendant then reconsidered his decision to represent himself, but after thinking about it, he decided to continue to represent himself. The court inquired of defendant several times whether he was sure he wanted to represent himself. Each time, defendant stated his desire to represent himself. Defendant accepted appointment of an investigator, maintained his right to a speedy trial, and rejected a seven-year plea offer by the People.

On April 30, 2012, defendant discussed with the trial court the discovery he had received and was missing, and indicated he had met with his investigator and discussed the discovery. Defendant affirmed his desire to proceed to trial without delay; stated he had read the police reports several times and knew what had occurred at his interview and during the preliminary hearing; and acknowledged that any deficiency in his self-representation would not support a claim for a new trial on appeal. The trial court then arranged for clothing to be delivered to the jail and ordered defendant to dress-out for

4

trial.  The court also ordered the defense investigator to meet with defendant that night for the purpose of reviewing the audio recordings of witness interviews.

On May 1, 2012, defendant gave the court clerk several pages of documents with the cover page stating " 'Motions,' " and delineated " '995,' " " 'Bill of particular,' " and " 'Motion to dismiss Counts 3 and 4.' "  The trial court reviewed and returned the documents to defendant.  The court then had the prosecutor state the seven-year plea offer to defendant again.  At that time, the prosecutor also stated her concern about defendant's mental capacity to represent himself.  The prosecutor stated that defendant's mother, who was present, had advised her that defendant had been off his medication since his incarceration and that his mother did not think he was thinking clearly.  The prosecutor also noted that she had observed defendant having conversations with himself, and that defendant had refused to talk to her (the prosecutor).  After reviewing the record in the case and confirming defendant had waived his right to counsel, the court concluded that it was "not seeing anything directly that provides to the Court a basis to have a doubt in terms of his—his abilities or mental state at this point."  The court then confirmed with defendant that he understood the plea offer and his exposure.  Defendant again rejected the offer.

The court thereafter questioned defendant about his medication.  Defendant stated that he had been taking his medication while in jail but that it had ran out two days earlier pending a psychiatric evaluation.  Defendant believed that it was unusual for the evaluation to not occur before the medication ran out.  The court ordered a psychiatric

evaluation to be conducted that day and also ordered a report on the status of defendant's medication.  When the court asked defendant if he was having difficulty understanding the court proceedings, defendant stated that he "completely" understood.  In response to the court's query regarding arrangements for his clothing, defendant stated his belief that his mother had delivered his clothing the prior day.

After discussing several matters involved in trial and the court's decision to trail the trial until May 8, 2012, all of which defendant said he understood, the court heard from defendant's mother.  Defendant's mother expressed her concern regarding defendant's mental capacity, noting defendant had a history of mental health issues since 1993.  She also stated that just by looking at defendant she could tell "he's . . . imbalanced."  The court assured defendant's mother that her concerns would be addressed at the next hearing.

On May 8, 2012, defendant's investigator reported that defendant had become agitated during their meeting while listening to the audio recordings of interviews and looking at photographs, and that defendant had insisted on returning to his jail cell.  Defendant, on the other hand, stated that he had listened to a couple of the audio recordings, and that the only one he did not listen to was his own interview.  Defendant also maintained that he did not become agitated, but simply ended the meeting when the investigator implied defendant was guilty.  Defendant further stated that he was ready to proceed to trial.

After the prosecutor reported that defendant's investigator had a doubt as to defendant's mental status, the court placed the matter on second call to review the medication evaluation report. Following the break, the court noted that it had reviewed a report from Dr. Christopher Sangdahl, and stated that it had an obligation to appoint defense counsel pursuant to section 1368, subdivision (a).

Appointed counsel informed the court that he had spoken with defendant, reviewed the "medical reports," and did not have a doubt as to defendant's competence. The court, however, continued the matter until the next day to allow time for counsel to further speak with defendant, review defendant's medical background, to confer with defendant's investigator, and to provide the court with further information as to defendant's competence. Defendant stated his understanding of the court's decision to trail the trial until May 9, 2012.

In his report, Dr. Sangdahl noted that his first meeting with defendant was on February 15, 2012, to address defendant's symptoms related to bipolar affective disorder; and that defendant was prescribed two medications. Dr. Sangdahl saw defendant again on April 4, 2012, and changed one of the medications. Defendant had received a seven-day supply of the new medication; however, due to an administrative error that was being investigated, defendant did not receive additional medication until he was seen by another doctor on May 3, 2012. The report also stated that defendant had drafted a grievance for failure to receive his medication, but that defendant was now satisfied since the medication had been resumed.

On May 9, 2012, appointed counsel informed the court that he had spoken with defendant "a couple of different times" and defendant's investigator; and that he had reviewed defendant's medical records and files from the public defender's office, and some of defendant's jail medical records. Based on his investigation, appointed counsel advised the court that he did not have a doubt as to defendant's competence. The court suspected that the investigator's difficulty with defendant may have been the result of the break in defendant's medication or "it may be [defendant's] personality." The court found that neither defendant's behavior with his investigator nor anything that had occurred in court demonstrated a lack of mental competence. The court thereafter readmonished defendant on his decision for self-representation. Defendant stated, "I do understand the risk that I'm taking, and I fully understand the procedures, and I understand that I gotta respect the courtroom procedure and that I am being treated as a regular lawyer, and I understand the risk that I'm taking, and I do wish to represent myself without assistant counsel, and I do wish to proceed." After defendant maintained his desire to represent himself, the court assigned the case to a trial department.

The trial commenced on May 10, 2012, with defendant representing himself during the entire trial. On May 22, 2012, the jury found defendant guilty as charged. The jury also found true the gun enhancement allegations attached to counts 1 and 2.

On July 6, 2012, counsel was appointed at defendant's request.

On October 18, 2012, defendant was sentenced to a total term of 24 years four months in state prison with credit for time served.  Defendant filed a notice of appeal on that same day.

## II

## DISCUSSION

Defendant argues the trial court's failure to conduct a competency hearing pursuant to section 1368 nullifies all further proceedings as actions in excess of the court's jurisdiction.  He relies on several incidents and discussions during trial, recounted *ante*, to argue that the trial court should have declared a doubt as to his competence and conducted a hearing pursuant to section 1368.  He also claims he was deprived of his constitutional rights to due process and a fair trial when substantial evidence showed he was legally incompetent to be tried.

Both federal due process and state law prohibit the state from trying or convicting a criminal defendant while he is mentally incompetent.  (*People v. Lewis* (2008) 43 Cal.4th 415, 524 (*Lewis*), overruled on other grounds in *People v. Black* (2014) 58 Cal.4th 912, 919-920.)  Under state law, "A defendant is mentally incompetent . . . if, as a result of mental disorder or developmental disability, the defendant is unable to understand the nature of the criminal proceedings or to assist counsel in the conduct of a defense in a rational manner."  (§ 1367, subd. (a).)  Under federal law, competency "requires sufficient present ability to consult with one's lawyer with a reasonable degree

of rational understanding and a rational and factual understanding of the proceedings against one. [Citation.]" (*People v. Halvorsen* (2007) 42 Cal.4th 379, 401 (*Halvorsen*).)

The trial court must " 'suspend trial proceedings and conduct a competency hearing whenever the court is presented with substantial evidence of incompetence, that is, evidence that raises a *reasonable* or *bona fide* doubt concerning the defendant's competence to stand trial.' [Citations.] When the court entertains no doubt about the defendant's competence, it is not required to hold a competency hearing. [Citations.] . . . 'A trial court's decision whether or not to hold a competence hearing is entitled to deference, because the court has the opportunity to observe the defendant during trial.' [Citations.]" (*People v. Howard* (2010) 51 Cal.4th 15, 45.)

"In resolving the question of whether, as a matter of law, the evidence raised a reasonable doubt as to defendant's mental competence, we may consider all the relevant facts in the record. [Citations.]" (*People v. Young* (2005) 34 Cal.4th 1149, 1217.) In *Young*, the court stated that the substantial evidence test is satisfied " ' "[i]f a psychiatrist or qualified psychologist [citation], who has had sufficient opportunity to examine the accused, states under oath with particularity that in his professional opinion the accused is, because of mental illness, incapable of understanding the purpose or nature of the criminal proceedings being taken against him or is incapable of assisting in his defense or cooperating with counsel . . . ." ' [Citation.]" (*Ibid.*) No such evidence appears in the present record.

"When the evidence casting doubt on an accused's present competence is less than substantial, the following rules govern the application of section 1368. It is within the discretion of the trial judge whether to order a competence hearing. When the trial court's declaration of a doubt is discretionary, it is clear that 'more is required to raise a doubt than mere bizarre actions [citation] or bizarre statements [citation] or statements of defense counsel that defendant is incapable of cooperating in his defense [citation] or psychiatric testimony that defendant is immature, dangerous, psychopathic, or homicidal or such diagnosis with little reference to defendant's ability to assist in his own defense [citation].' [Citation.]" (*People v. Welch* (1999) 20 Cal.4th 701, 742 (*Welch*).) " ' " 'An appellate court is in no position to appraise a defendant's conduct in the trial court as indicating insanity, a calculated attempt to feign insanity and delay the proceedings, or sheer temper.' " ' [Citations.]" (*People v. Marks* (2003) 31 Cal.4th 197, 220 (*Marks*).)

Numerous courts have found, under circumstances similar to or even more extreme than those before us, that there was no substantial evidence of incompetence requiring suspension of the proceedings. For example, in *Halvorsen*, the Supreme Court held that the trial court did not err in failing to hold a competency hearing, despite (1) the testimony of a psychiatrist that the defendant suffered from bipolar disorder and was psychotic both at the time he committed the offenses and at trial, and (2) the defendant's own testimony that purportedly was " 'filled with tangential responses to the questions of counsel and strange, irrelevant statements, often marked by a seemingly psychosis-induced preoccupation with a newly embraced religion and an obsession with his own

11

and society's unworthiness.' " (*Halvorsen*, *supra*, 42 Cal.4th at p. 402.)  The court nonetheless held there was no substantial evidence of incompetence.  (*Ibid.*)

In *Lewis*, defense counsel raised a question as to the defendant's competence after the defendant made outbursts during the testimony of a prosecution witness, and a psychologist submitted a letter stating there was evidence that the defendant had suffered brain damage.  (*Lewis*, *supra*, 43 Cal.4th at p. 523.)  The Supreme Court nonetheless held there was no substantial evidence of incompetence requiring the trial court to conduct a hearing.  (*Id*. at p. 524.)

In *Welch*, the defendant had alleged conspiracy in the proceedings; more than once had claimed the court, his own counsel, and the prosecutor had been acting in collusion; had claimed the local bar association should be disqualified from representing him; accused counsel of "back-room discussion"; alleged evidence had been "falsified by the sheriff's department"; and alleged "jail officials" had monitored interviews with psychologists.  (*Welch*, *supra*, 20 Cal.4th at p. 730, fn. 3.)  In addition, the defendant had "engage[d] in verbal displays and interrupt[ed] and interfere[d] with the conduct of the courtroom proceedings"; "constantly interrupt[ed] the court and counsel"; and "accused the bailiff of tampering with his legal papers, asked the court to have his attorneys sit in the jury box due to a conflict of interest, was reluctant to respond to the court's questions while repeating that his civil rights were being abused, and interrupted the proceedings . . . by requesting that the court and various individuals be served with a civil complaint in a federal matter."  (*Id*. at pp. 730-731.)  The court held that the

circumstances, "while suggesting the trial court *could have* ordered a hearing on competence to stand trial, [did] not establish that the trial court *abused its discretion* in failing to do so . . . ." (*Id*. at p. 742.)

Here, while the record shows defendant suffered from some type of mental illness that required medication, it does not reflect substantial evidence to establish defendant was incompetent to stand trial. During the proceedings, the court saw nothing to raise a doubt about defendant's competence. Defendant coherently answered the court's questions, without demonstrating confusion. Defendant complied with instructions of the court, allowed the prosecutor to finish her statements and concerns before responding, and listened closely to the court's questions and concerns. Defendant attentively listened while the court discussed the plea offer proposed by the People and the admonishments regarding self-representation. Defendant knowingly rejected the plea offer and insisted on going to trial. He also maintained his decision to represent himself, stating that he had no difficulty understanding the proceedings; that he understood the risk of representing himself; that he respected the courtroom procedures; and that he understood he would be treated like a lawyer. He also understood the reason to wear civilian clothing and stated to the court his understanding that his mother would deliver his clothing for him consistent with a previous order. Defendant also stated his understanding of the court's decision to trail the trial until May 9, 2012, so that appointed counsel could form an opinion as to defendant's competence.

Although the prosecutor, defendant's investigator, and defendant's mother expressed some concerns about defendant's competence, it appears defendant's agitation or mental state at that time stemmed from a lapse in his medication. On May 1, 2012, defendant's mother noted defendant appeared imbalanced due to defendant being off his medication. Defendant's investigator described defendant as being agitated and unwilling to review discovery during his contact with defendant on May 6, 2012. Dr. Sangdahl reported that his first meeting with defendant was on February 15, 2012, to address defendant's symptoms related to bipolar affective disorder; and that defendant was prescribed two medications. Dr. Sangdahl saw defendant again on April 4, 2012, and changed one of the medications. Dr. Sangdahl further noted that defendant had received a seven-day supply of the new medication; however, due to an administrative error, defendant did not receive additional medication until he was seen by another doctor on May 3, 2012. The court reviewed the report from Dr. Sangdahl regarding the interruption in defendant's medication and appointed counsel pursuant to section 1368, subdivision (a).

Section 1368 provides that, when "a doubt arises in the mind of the judge as to the mental competence of the defendant, [the judge] shall state that doubt in the record and inquire of [defense counsel his or her] opinion" as to the defendant's competence. (§ 1368, subd. (a).) The court may recess the criminal proceedings to allow defense counsel to form an opinion. (§ 1368, subd. (a).) If defense counsel informs the court of a belief that defendant is or may be mentally incompetent, the court "shall" order the

14

question of competence to be determined in a hearing held pursuant to sections 1368.1 and 1369.  (§ 1368, subd. (b).)  If the court believes the defendant is incompetent, it may order such a hearing notwithstanding defense counsel's opinion to the contrary.  (§ 1368, subd. (b).)

Here, on May 9, 2012, appointed counsel informed the court that he had spoken with defendant "a couple of different times" and defendant's investigator; and that he had reviewed defendant's medical records and files from the public defender's office, and some of defendant's jail medical records.  Based on his investigation, appointed counsel advised the court that he did not have a doubt as to defendant's competence.  The court suspected that the investigator's difficulty with defendant may have been the result of the break in defendant's medication or "it may be [defendant's] personality."  It was reasonable for the court to attribute defendant's behavior with his investigator on May 6 to the lapse in defendant's medication or simply defendant's personality.  The fact that, in the cold record on appeal, defendant appeared to be agitated, does not necessarily indicate lack of competence.  Rather, we must defer to the trial court, which had the opportunity to observe defendant's demeanor during the proceedings.  (*Marks*, *supra*, 31 Cal.4th at p. 220.)  Defendant never had outbursts during the proceedings, and his responses to the court in fact showed that he understood the nature of the proceedings.  (See *Lewis*, *supra*, 43 Cal.4th at pp. 525-526; *Marks*, *supra*, at p. 221; see also *People v. Frye* (1998) 18 Cal.4th 894, 1005 ["An angry and emotional reaction to a verdict of guilt does not indicate an inability to understand the nature of the criminal proceedings, or to

15

rationally assist counsel"], disapproved on another ground in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22.) Consistent with *Halvorsen*, *Lewis*, *Marks*, and *Welch*, we conclude defendant has failed to demonstrate substantial evidence of incompetence, and the trial court did not err in failing to suspend the proceedings to conduct a competency hearing.

## III

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ _____
P. J.

We concur:


HOLLENHORST _____
J.


McKINSTER _____
J.